IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| T.D.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-1560 |
| v. | ) | |
| | ) | Magistrate Judge |
| ANDREW M. SAUL, Commissioner of | ) | Susan E. Cox |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff T.D.B. ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") to deny her application for disability benefits. For the following reasons, Plaintiff's motion is granted (Dkt. 21),[1] the Commissioner's motion is denied (Dkt. 28), and the case is remanded for further proceedings consistent with this opinion.

**I.      Background**

Plaintiff filed an application for disability insurance benefits on March 14, 2013, alleging a disability onset date of February 20, 2007. (R. 1411.) The claim was denied initially on July 2, 2013, and upon reconsideration on February 13, 2014. (*Id*.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 29, 2015. (*Id*.) On July 15, 2015, ALJ Lorenzo Level issued an opinion finding that Plaintiff was not disabled. (R. 1411-22.) Plaintiff's request for review by the Appeals Council was denied, and Plaintiff appealed the ALJ's decision to the United States District Court for the Northern District of Illinois. (R. 1448.) Magistrate Judge Kim remanded the case, finding that the ALJ's subjective symptom assessment and opinion evidence analysis were flawed. (R. 1447-1456.)

---

[1]   Plaintiff filed a Memorandum (Dkt. 21) and Defendant filed a Response (Dkt. 28); theCourt construes each as a Motion for Summary Judgment.

On remand, a second hearing was held on September 11, 2018. (R. 1340.) On November 5, 2018, ALJ Janice M. Bruning issued a decision finding Plaintiff not disabled. (R. 1340-1354.) Plaintiff did not file exceptions to the ALJ's decision with the Appeals Council, making the ALJ's opinion the final decision of the Commissioner. 20 C.F.R. § 404.984. Plaintiff appealed the ALJ's decision to this Court on March 5, 2019. (Dkt. 1.)

The Court will not belabor the factual history of this case beyond what is needed in this opinion. The history was ably and thoroughly detailed in Magistrate Judge Kim's previous opinion. (Dkt. 24.) Plaintiff was previously employed as a registered nurse; in February 2007, she had an encounter with an intoxicated patient, who violently grabbed her left wrist and injured it. (R. 563.) Plaintiff attempted physical therapy for her injured wrist, but she found that it increased her pain and caused her arm to become blue and sweaty. (R. 506, 563.) Dr. Timothy Lubenow, M.D., diagnosed Plaintiff with Chronic Regional Pain Syndrome ("CRPS"). (R. 500, 563.)

To treat her CRPS, Plaintiff underwent several stellate ganglion blocks with no relief. (R. 504.) She also received a "5-day epidural" and was prescribed several drugs to attempt to alleviate her pain symptoms, including Norco, Lyrica, Celebrex, Zanaflex, Topamax, and Fentanyl. (R. 501-02, 563-65, 923.) Plaintiff continued to have chronic pain through 2009, and had an epidural catheter placed in her left arm to provide short-term pain relief. (R. 1018.) Presumably, the catheter did not provide lasting relief, as Plaintiff had a spinal cord stimulator implanted in her in early 2010. (R. 986.) On January 13, 2012, Plaintiff continued to report bilateral arm pain (worse in her left arm) and a persistent tremor with swelling, discoloration, and shooting pain. (R. 530-31.) She continued to suffer from shaking in her arms in June 2012. (R. 532.) On August 31, 2012, Dr. Lubenow continued to diagnose Plaintiff with persistent CRPS in her left arm, tremors in both arms, and possible peripheral neuropathy. (R. 535.) Plaintiff had similar

complaints through her date last insured ("DLI") of December 31, 2012.[2] (R. 536-38.)

Several of Plaintiff's treating physicians provided opinions on Plaintiff's medical condition. The first is from Dr. Lubenow, dated July 9, 2010, and addressed to a claims adjuster at Gallagher Bassett Insurance Company. (R. 837.) At that time, Dr. Lubenow opined that Plaintiff had reached maximum medical improvement, and could perform part time sedentary work before eventually proceeding to fulltime sedentary work. (*Id*.) However, after further treatment and progression of her condition, Dr. Lubenow changed his opinion. (R. 831.) On August 31, 2012, he wrote to the claims adjuster and stated that, although he had previously believed she could work part time, he no longer felt "that she would be able to return to work on a regular, ongoing work week day at 40 hours a week and thereby is essentially unemployable." (*Id*.) On March 15, 2013, Dr. Lubenow reiterated this position to the claims adjuster and added that he did not believe Plaintiff should drive anymore. (R. 829-30.)

On November 24, 2014, Dr. Lubenow submitted Pain Residual Functional Capacity Questionnaire. He noted that he had seen Plaintiff every 3-6 months since 2007, diagnosed her with CRPS in her arms and legs and found that her prognosis was guarded. (R. 875.) He wrote that Plaintiff was incapable of tolerating even low stress jobs, could sit/stand/walk for less than two hours in an eight-hour workday, would need to take approximately six 10-minute breaks each day, and would need to miss more than four days per month. (R. 875-77.)

On November 24, 2014, Dr. Jennifer Earvolino also submitted a Pain Residual Functional Capacity Questionnaire. (R. 872.) Dr. Earvolino noted that she had seen Plaintiff every 3-6 months since September 2011, diagnosed her with CRPS, and found that her prognosis was fair. (*Id*.) She wrote that Plaintiff could stand/sit/walk for less than two hours in an eight-hour workday, and

---

[2] The Court will not delve into the post-DLI medical history in this opinion, as it is not relevant to the Court's decision here.

3

would be unable to work because her pain would make it impossible to focus or concentrate adequately to perform a job. (R. 872-74.)

Finally, on November 24, 2014, Plaintiff's psychologist Dr. Patricia Merriman also provided a Mental Residual Functional Capacity Questionnaire. (R. 879.) Dr. Merriman had been treating Plaintiff intermittently since September 2007, with increasingly regularity until she was being seen every other week in 2014. (*Id*.) Ultimately, Dr. Merriman concluded that Plaintiff's [psychological functioning is difficult to clearly diagnosis [sic]" and that "[a] complete neuropsychological assessment would provide a clearer picture of her deficits and strengths." (R. 883.)

ALJ Bruning issued a written decision on November 5, 2018, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 1340-1354.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 20, 2007, and had a DLI of December 31, 2012. (R. 1342.) At step two, the ALJ concluded that Plaintiff has the severe impairment of CRPS. (*Id*.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 1347.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions: she would be limited to lifting and carrying 10 pounds; only occasional use of her left upper extremity to reach, handle, finger, and feel; avoid environments of concentrated exposure to temperature extremes. (R. 1348.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (R. 1352.) At step five, however, the ALJ determined that, in light of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id*.) These findings led to the conclusion that Plaintiff is not disabled as defined by the Act. (1353.)

In coming to her decision, ALJ Bruning attempted to weigh the medical opinion evidence in the record, including from Plaintiff's treating physicians. (R. 1350-51.) She gave "no weight" to Dr. Lubenow's July 9, 2010 letter; the entirety of her analysis is as follows: "[h]e did not set forth any specific functional limitations, but referred to the FCE (functional capacity evaluation) that is not seen in the record in order to clarify the functional limitations." (R. 1350.) Likewise, the ALJ gave "no weight" to Dr. Lubenow's August 2012 and March 2013 opinions that she was not employable. (*Id*.) Again, the analysis consists of one sentence: "[i]t is quite likely that Dr. Lubenow was referring to the claimant's past work as a registered nurse, and her inability to pursue that strenuous occupation is actually consistent with the findings reached in this decision." (*Id*.)

Finally, the ALJ assigned "little weight" to the functional capacity questionnaires submitted by Drs. Lubenow, Earvolino, and Merriman. The ALJ reasoned that they were entitled to little weight because they "were rendered almost two years after the claimant was last insured for benefits." (*Id*.) Additionally, the ALJ noted that "a determination regarding the ability to work at any job falls within the purview of a vocational expert," and that "the presence or absence of disability in Social Security claims is a determination reserved to the Commissioner." (*Id*.)

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4).

If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined

6

by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III.    Discussion**

Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 416.927(c). Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record.[3] 20 C.F.R. § 416.927(c)(2) ; *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ; *Clifford v. Apfel*, 227 F.3d at 870. An ALJ must provide "good reasons" for how much weight he gives to a treating source's medical opinion. *See Collins v. Astrue*, 324 Fed. Appx. 516, 520 (7th Cir. 2009); 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our…decisions for the weight we give your treating source's opinion."). When an ALJ decides for "good reasons" not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors, including the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the supportability of the opinion; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); see 20 C.F.R. § 416.927(c)(2)-(6). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

---

[3]    A change to the Administration's regulation regarding weighing opinion evidence will eliminate this rule, commonly known as the "treating physician rule," for new claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844, 5848–49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

Here, the ALJ failed to adequately perform the requisite analysis in weighing Plaintiff's treating physicians' opinion evidence. Regarding Dr. Lubenow's August 2012 and March 2013 letters, the Court does not believe the ALJ provided "good reasons" for rejecting Dr. Lubenow's opinion that Plaintiff was incapable of working. The ALJ's assumption that Dr. Lubenow was discussing Plaintiff's previous work is not supported anywhere in the record. If the ALJ is going to rely on this assumption, she must draw a logical bridge from the evidence in the record to support that conclusion. In fact, the Court believes the evidence in the record supports a diametrically opposite conclusion. In his July 2010 letter, Dr. Lubenouw opined that Plaintiff could be cleared for sedentary work; in his later letters, he recanted that opinion. The Court is hard pressed to imagine that the ALJ believes that registered nurse is a sedentary job. In light of Dr. Lubenow's previous July 2010 opinion regarding sedentary work that is clearly outside of Plaintiff's previous work as a registered nurse, it would make more sense for his subsequent opinions to cover employment outside of nursing. The Court also rejects Defendant's argument that Dr. Lubenow's opinions only concern work as a registered nurse because the letters are addressed to an insurance claims adjuster for a work-related injury. (*See* Dkt. 28 at 11.) Without knowing more about the insurance policy at issue (*i.e.*, whether it only covered Plaintiff if she was unable to return to her previous work or to any work at all), the Court believes that any such conclusion is nothing more than guesswork. The ALJ's failure to support her conclusion amounts to a failure to provide "good reasons" for rejecting Dr. Lubenow's opinion, and the Court remands for an adequate treating physician analysis.

As for the remaining treating physician opinions, the Court believes that the ALJ's analysis was also defective. First, the Court is not convinced that the fact that they were submitted after Plaintiff's DLI consists of "good reasons" for rejecting them. All three doctors had treated Plaintiff during the relevant time period, and it is not clear whether the opinions apply to the pre-DLI time

8

period or not. In particular, Dr. Lubenow's opinion very likely applies to Plaintiff's pre-DLI condition, as he appears to have opined in August 2012 that Plaintiff had reached maximum medical improvement in July 2010, and was no longer even capable of performing part time sedentary work. Nor does the Court believe that the ALJ's statement that disability determinations are reserved for the Commissioner is a valid reason for assigning weight to opinion evidence. It is always true that the disability determination is made by the Commissioner, but that does not relieve the Commissioner from considering opinion evidence to the contrary or make any opinion regarding a claimant's functional capacity to perform work necessarily invalid. If taken at face value, the ALJ's stated reason for rejecting this opinion evidence could always be used to assign non-controlling weight to medical opinion evidence, and would render such evidence a functional nullity in every case. The Court finds that this is not a "good reason" for assigning non-controlling weight to the treating physicians' opinions.

Moreover, even if the Court believed that the timing of those opinions qualified as good reason for assigning less than controlling weight to them, the Court does not believe the ALJ adequately discussed the requisite factors outlined above. There is no evidence that any of them were considered in any detail by the ALJ, and the Court finds that the regulations require such analysis before assigning weight to any opinion evidence. As such, the Court remands for appropriate consideration of those treating physician opinions as well.

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, she must take care to ensure that she has done so for "good reasons" and that all the relevant factors are considered in determining what weight to give the opinion. The Court does not believe that the ALJ did so here, and remand is required.[4]

---

4  Because the Court remands on the bases articulated above, it does not reach the other issues raised by the Plaintiff on this appeal.

9

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is granted (dkt. 21), the Commissioner's motion is denied (dkt. 28), and the case is remanded for further proceedings consistent with this opinion.

ENTERED: 5/1/2020

Susan E. Cox,
United States Magistrate Judge